**Stephen J. Voorhees OSB #015088**
**stephen@forumlawgroup.com**
**FORUM LAW GROUP, LLC**
**811 SW Naito Parkway, Suite 420**
**Portland, Oregon 97204**
**Tel: 503.780.6800**
**Fax: 503.961.1474**

**Attorney for Plaintiff**

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| **CHRISTOPHER HUGHSON, individually** And on behalf of all others similarly situated<br><br>Plaintiff,<br><br>vs.<br><br>**CAPITAL ADVANCE SOLUTIONS, LLC,** a New Jersey Corporation<br><br>**PILOTHOUSE SOLUTIONS LLC,** a New York Corporation<br><br>**GEOFFREY HORN, individually**<br><br>**CHARLES BETTA, individually**<br><br>Defendants | Case No.<br><br>**CLASS ACTION ALLEGATION COMPLAINT**<br><br>Statutory Action under the Telephone Consumer Protection Act ("TCPA") (47 U.S.C. 227, et. seq.)<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Christopher Hughson ("Hughson") brings this Complaint and Demand for Jury Trial ("Complaint") against Defendants Capital Advance Solutions, LLC, Pilothouse Solutions LLC, Geoffrey Horn, and Charles Betta (collectively "Defendants") to stop their practice of making unsolicited telephone calls to consumers nationwide, including its unlawful placing of automated

robocalls and its calling of telephone numbers listed on the National Do Not Call Registry, and to obtain redress for all persons injured by its conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1. Defendants, working in concert, claim to be dedicated to helping small businesses gets the financing they need by providing merchant cash advances and payment processing services.

2. Unfortunately for consumers, Defendants' aggressive attempts to market its services involve an unlawful telemarketing campaign through which it makes, or has its employees, agents, or representative make on its behalf and with its knowledge, robocalls and unsolicited telemarketing calls to telephone numbers listed on the National Do Not Call Registry.

3   Defendants and/or its agents failed to obtain prior express written consent from consumers to make such telephone calls and therefore have violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

4. The TCPA was enacted to protect consumers from unsolicited and repeated telephone calls exactly like those alleged in this case. Defendants and/or its agents made these calls despite the fact that neither Plaintiff nor the other members of the three putative Classes (defined below) provided Defendants with prior express written consent to receive such calls. By making the phone calls at issue in this Complaint, Defendants caused Plaintiff and the other members of the Classes actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited phone calls, the monies paid to their telephone carriers for the receipt of such calls, the loss of time taking those calls, and the loss of use of their telephones to receive other inbound calls.

5.  In response to Defendants' unlawful conduct, Plaintiff files the instant lawsuit seeking an injunction requiring Defendants to cease all unsolicited calling activities as well as an award of statutory damages to the members of the Classes as provided under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

6.  Plaintiff Christopher Hughson is a natural person, a resident of Multnomah County, Oregon, and a citizen of the State of Oregon.

7.  Defendant Capital Advance Solutions LLC is a corporation existing under the laws of the State of New Jersey with its principal place of business located at 1715 State RT 35, Suite 302, Middletown, New Jersey, 07748, conducts business throughout this District, the State of Oregon, and the United States.

8.  Pilothouse Solutions LLC is a corporation existing under the laws of the State of New York with its principle place of business located at 2 Water St, New York, New York 10004, conducts business throughout this District, the State of Oregon, and the United States.

9.  Geoffrey Horn is an individual residing in the State of New York, specifically at 401 East 34th Street, New York, NY 10016, and is the Chief Executive Officer of Defendant Capital Advance Solutions LLC. Mr. Horn conducts business throughout this District, the State of Oregon, and the United States.

10. Charles Betta is an individual residing in the State of New Jersey, specifically at 208 Marina Drive, Highlands, NJ 07732, and is the President of Defendant Capital Advance Solutions LLC. Mr. Betta conducts business throughout this District, the State of Oregon, and the United States.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the TCPA, which is a federal statute. This Court has personal jurisdiction over Defendants because Defendants conducts business transactions within this District, and the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

12. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants conduct significant amounts of business transactions within this District and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Venue is additionally proper because Plaintiff resides in this District.

## COMMON FACTUAL ALLEGATIONS

13. According to its website, Defendants are in the business of providing small business capital advances and merchant services, essentially a payday loan company for small businesses.

14. Defendants, on their own and/or through its representatives, have turned to a tried and true, albeit unlawful, method of reaching new customers: unsolicited telemarketing.

15. Specifically, Defendants place thousands of outbound telemarketing calls each day to consumers nationwide. Many of these calls are placed to numbers that are listed on the National Do Not Call Registry. Others, known as robocalls, feature prerecorded messages.

16. These calls are made for the express purpose of soliciting the call recipients to engage in business with Defendants.

17. Not surprisingly, consumers have repeatedly spoken out against Defendants' pervasive and widespread telemarketing practices[1]:

---

1 *See, e.g.,* https://www.google.com/#q=capital+advance+solutions&lrd=0x89c2338dcc62917b:0x451578edf79360e6,1, (last visited October 3, 2016).

4

- "I keep receiving robocalls from this company. They have a pretty aggressive call center pre-screening the responses, and if you so much as ask them which company they represent, CLICK, they hang up. They called me at least once a day for a week."

- "More robo calling from Capital Advance Solutions - an unsolicited caller. I am on a all the Do Not Call registers. Totally annoying this whole industry."

- "They keep calling every other day it's beyond annoying. I told them 1000x to be removed from the call list."

18. Neither Plaintiff nor the other members of the proposed Classes ever provided Defendants and/or its agents with express written consent to receive the telephone calls at issue in this Complaint. Defendants do not have any record of express written consent to place robocalls or telemarketing calls to Plaintiff or the members of the proposed Classes.

## FACTS SPECIFIC TO PLAINTIFF HUGHSON

19. On March 11, 2010, Plaintiff Hughson registered his personal cellular telephone number with the National Do Not Call Registry for the express purpose of avoiding unwanted telemarketing calls.

20. Nonetheless, on July 6, 2015 at approximately 1:54 PM, Pacific Standard Time, Plaintiff received a telephone call on his personal cellular telephone from Defendants regarding its services for sale. The phone call came from a fake/spoofed Caller ID which rings to an "automated opt out service."

21. Over the past year Plaintiff has received several new unwanted telemarketing calls from Defendants (or its agents) that were directed to his do-not-call registered personal cellular telephone number, particularly the following:

- September 6, 2016 at 1:01 PM

- September 6, 2016 at 10:52 PM

5

- September 1, 2016 at 10:32 PM
- August 4, 2016 at 1:38 PM

22. Plaintiff did not provide Defendants or its agents with express written consent to receive these telemarking calls or robocalls.

23. Plaintiff had no existing business relationship with Defendants or its agents at the time of the aforementioned calls and had not entered into any business transactions with Defendants or its agents during the 18 months preceding such calls.

24. As a result of Defendants' intrusive calls, Plaintiff suffered harm and an invasion of his privacy.

25. Defendants were and are aware that the above-described telephone calls were being made either by it directly, or made on its behalf, and that the telephone calls were being made to consumers who had not consented to receive them.

## CLASS ALLEGATIONS

26. **Class Definitions**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and two Classes of similarly situated individuals, defined as follows:

**Do Not Call Class**: All individuals in the United States who received more than one telephone call made by or on behalf of Defendants within a 12-month period: (1) promoting Defendants' products or services; (2) at a telephone number that had been registered with the National Do Not Call Registry for at least 30 days at the time of each call; (3) where such individual had not entered into any purchase or transaction with Defendants within the 18 months immediately preceding such calls; and (4) where neither Defendants nor its agents

had any current record of express written consent to place such calls at the times such calls were made.

**Robocall Class**: All individuals in the United States who received a telephone call made by or on behalf of Defendants: (1) promoting Defendants' products or services; (2) where such call featured an artificial or prerecorded voice; and (3) where neither Defendants nor its agents had any current record of prior express written consent to place such call at the time such call was made.

**Oregon Stop Calling Class**: All residents of the State of Oregon who (1) received a telephone call made by or on behalf of Defendants; (2) promoting Defendants products or services; (3) where Defendants had a "stop calling" request on record for the telephone number called at the time such call was made.

The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

## Fed. R. Civ. P. 23(a) Prerequisites

27.     **Numerosity**: The exact sizes of the Classes are unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and

7

belief, Defendants have made telephone calls to thousands of consumers who fall into each of the Classes. Members of the Classes can be identified through Defendants' records.

28. **Commonality**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, including those concerning the overarching legality of the common conduct featured by Defendants' uniform telemarketing campaign. Such common questions predominate over any questions that may affect individual members of the Classes.

29. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Classes, in that Plaintiff and the members of the Classes sustained damages arising out of Defendants' uniform wrongful telemarketing conduct toward Plaintiff and each of the Classes. As a result of this uniform misconduct, Plaintiff and the other members of the Classes suffered the same injuries (in the form of the violations of their statutory rights under the TCPA) and are entitled to identical calculations of statutory damages (per call).

30. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiff.

## Fed. R. Civ. P. 23(b)(2), (3) Provisions

31. Policies Generally Applicable to the Classes: This class action is appropriate for certification because Defendants **have acted or refused to act** on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of each of the Classes, and making final injunctive relief appropriate with respect to each of the Classes as a whole. Defendants' practices challenged herein apply to and affect the members of each of the Classes uniformly, and Plaintiffs'

8

challenge of those practices hinges on Defendants' conduct with respect to each of the Classes as a whole, not on facts or law applicable only to Plaintiff.

32. **Questions of law or fact common to the class predominate** over any questions affecting only individual members because the claims of Plaintiff and the other members of the Classes all arise from Defendants' uniform campaign of making unauthorized calls to their telephones. The main questions to be answered, such as the overarching legality of Defendants' telemarketing campaign, are common to all the individuals subject to such campaign. Moreover, the answers to such common questions are necessarily resolvable through common proof, primarily from information to be found within Defendants' own records.

33. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, and because joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendants' misconduct, and class members do not have substantial interest in individually controlling the prosecution of separate actions. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. Plaintiff's counsel is unaware of other litigation concerning the controversy. It is desirable to concentrate litigation of the claims in this forum for judicial economy and consistency. A class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a

single court. Furthermore, the common questions of law and fact in this case can be readily answered with common proof, often from Defendants' own records. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

### Basis on Which Plaintiff Claims to Be an Adequate Representative of the Classes

34. Plaintiff has the same interests as the members of the proposed Classes. Defendants made telemarketing calls to Plaintiff and each member of the putative Classes—using prerecorded voices when calling the members of the Robocall Class, and calling multiple times for the members of the Do Not Call Class—without first obtaining prior express written consent to do so, all in violation of the TCPA. Consequently, like the other members of the Classes, Plaintiff's interests lie in ensuring that Defendants' unlawful conduct does not continue in the future and that he and the other members of the Classes recover the statutory damages and injunctive relief to which they are entitled. He is capable and motivated to resolve the present dispute. Further, he has no interests antagonistic to those of the Classes.

### Questions of Law and Fact Alleged to be Common to the Classes

35. Common questions for the Classes include, but are not necessarily limited to the following:

**The Do Not Call Class**:

(a) Whether Defendants' conduct violated the TCPA;

(b) Whether Defendants and/or its agents made more than one telephone call within a 12-month period to consumers whose telephone numbers were registered with the National Do Not Call Registry (for at least thirty days, at the time of each call);

(c) Whether Defendants and/or its agents systematically made such telephone calls to consumers who did not previously provide Defendants or its agents with prior express consent to receive such calls; and

(d) Whether Plaintiff and members of the Do Not Call Class are entitled to treble damages based on the willfulness of Defendants' conduct.

**Robocall Class**:

(a) Whether Defendants' conduct violated the TCPA;

(b) Whether Defendants and/or its agents systematically made telephone calls to consumers who did not previously provide Defendants or its agents with prior express consent to receive such telephone calls;

(c) Whether Defendants' telephone calls featured an artificial or prerecorded voice; and

(d) Whether Plaintiff and the members of the Robocall Class are entitled to treble damages based on the willfulness of Defendants' conduct.

**Oregon Stop Calling Class**:

(a) Whether Defendants' conduct violated the UTPA;

(b) Whether Defendants and/or its agents made one or more calls to telephone numbers despite having prior records of "stop calling" requests at such numbers;

(c) Whether Defendants and/or its agents made such calls to promote its goods or services; and

(d) Whether Plaintiff and members of the Oregon Stop Calling Class are entitled to statutory damages as well as punitive damages based on the willfulness of Defendants' conduct.

**FIRST CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227**

**(On Behalf of Plaintiff and the Do Not Call Class)**

36.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

37.     47 U.S.C. § 227(c)(5) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

38.     The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." See 47 C.F.R. § 64.1200(c).

39.     47 C.F.R. § 64.1200(e) provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" and the Commission's Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

40.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls

made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.
>
> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made."

41.     Defendants and/or its agents made more than one unsolicited telemarketing call to Plaintiff and members of the Do Not Call Class within a 12-month period without having prior express written consent to place such calls. Each such call was directed to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days. Plaintiff and members of the Do Not Call Class did not provide consent to receive such telemarketing calls from

13

Defendants or its agents and/or neither Defendants nor its agents have any record of consent to place such telemarketing calls to Plaintiff or the members of the Do Not Call Class.

42. Defendants violated 47 C.F.R. §§ 64.1200(d) and (e) by causing calls to be initiated for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Do Not Call Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls.

43. Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the members of the Do Not Call Class received more than one telephone call in a 12-month period made by or on behalf of Defendants in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the members of the Do Not Call Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled to, *inter alia*, receive at least $500 in damages for each such violation of 47 C.F.R. § 64.1200.

44. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by Plaintiff and the members of the Do Not Call Class.

## SECOND CAUSE OF ACTION
**Violation of 47 U.S.C. § 227**
**(On behalf of Plaintiff and the Robocall Class)**

45. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

46 Defendants and/or its agents made unsolicited and unwanted telemarketing calls to telephone numbers belonging to Plaintiff and the other members of the Robocall Class—without their prior express consent—in an effort to sell Defendants' goods and services.

47. These calls featured artificial or prerecorded voices.

48. By having unsolicited telephone calls made to Plaintiff's and the Robocall Class members' telephones without prior express written consent, and by using artificial or prerecorded voices when placing such calls, Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii).

49. As a result of Defendants' unlawful conduct, Plaintiff and the members of the Robocall Class suffered actual damages and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

50. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Robocall Class.

## THIRD CAUSE OF ACTION
### Violation of Oregon Rev. Stat. § 646
### (On behalf of Plaintiff and the Oregon Stop Calling Class)

51. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

52  Plaintiff is a "person" as defined by Or. Rev. Stat. § 646.605 who is a telephone customer of a telecommunications company and thus a telephone "party" as defined by Or. Rev. Stat. § 646.565.

53. At all material times, Defendants were engaged in "trade" and "commerce" as defined by Or. Rev. Stat. § 646.605 because they were and continue to be in the business of selling goods and services to persons in the State of Oregon.

54. In the course of their business, Defendants engaged in "Unlawful" acts as defined in Or. Rev. Stat. § 646.608.

55. Specifically, Defendants and/or its agents knowingly and willfully continued to call Plaintiff and the members of the Oregon Stop Calling Class after receiving requests to stop, and all in order to solicit unwanted goods and services.

56. According, Defendants knowingly and willfully violated Or. Rev. Stat. § 646.563 which states that "[a] person engages in an unlawful practice if, during a telephone solicitation, the called party states a desire not to be called again and the person making the telephone solicitation makes a subsequent telephone solicitation of the called party at that number," and thus committed per se unlawful acts pursuant to Or. Rev. Stat. Ann. § 646.608(jj).

57. At all relevant times, Defendants acted knowingly or in reckless disregard of the requirements of Or. Rev. Stat. § 646 *et seq.* by calling Plaintiff and members of the Oregon Stop Calling Class after receiving requests to stop.

58. As a result of Defendants' unlawful trade practices, Plaintiff and the members of the Class have suffered ascertainable losses, in the measurable amounts of time lost to answer Defendants' calls, the wear and tear imposed on their telephone equipment, the diminished utility of their paid-for telephone service plans, and any monies they paid and lost to receive Defendants' unwanted and unlawful telephone calls.

59. Plaintiff, on behalf of himself and the Class, seeks an order: (i) permanently enjoining Defendants from engaging in the unlawful conduct described herein; (ii) compelling Defendants to cease all unlawful telephone calling activities; (iii) requiring Defendants to pay statutory damages, punitive damages, and reasonable costs and attorneys' fees; and (iv) further relief to be specified at trial and as otherwise available under Or. Rev. Stat. § 646.638..

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Christopher Hughson, individually and on behalf of the Classes, prays for the following relief:

1. An order certifying the Classes as defined above, appointing Plaintiff Christopher Hughson as the Class Representative for each of the Classes, and appointing his counsel as Class Counsel for the Classes;

2. An award of actual and statutory damages;

3. A declaratory judgment that Defendants' telephone calling practices failed to comply with National Do Not Call Rules and that Defendants' telephone calls featured prerecorded or artificial voices;

4. An injunction requiring Defendants to cease all unsolicited calling activities, and otherwise protecting the interests of the Classes;

5. An order requiring Defendant to disgorge any ill-gotten funds acquired as a result of its unlawful telephone practices;

6. An award of reasonable attorneys' fees and costs; and

7. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

FORUM LAW GROUP, LLC

　　/s/ Stephen J. Voorhees
Stephen J. Voorhees　　　　OR Bar # 150595
811 SW Naito Parkway, Suite 420
Portland, Oregon 97204
Phone – 816-445-2100
Fax – 816-445-2120
stephen@forumlawgroup.com
ATTORNEY FOR PLAINTIFF